UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DARREN ALLGOOD, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:02-cv-1077-DFH-TAB |
| | ) | |
| GENERAL MOTORS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON MEDICAL MONITORING MOTION

Defendant General Motors Corporation has moved to dismiss plaintiffs'
demands for medical monitoring damages.  The motion is cast as a motion
pursuant to Rule 12(b)(6), Rule 12(c), and/or Rule 56 of the Federal Rules of Civil
Procedure.  Docket No. 170.  For reasons stated below, the motion is denied.


*Plaintiffs' Allegations*


Plaintiffs are residents of Lawrence County, Indiana.  The adult plaintiffs
own property along or near a creek called Bailey's Branch, which is a tributary of
Pleasant Run Creek.  For many years, defendant General Motors has owned and
operated an aluminum casting facility called the Bedford Foundry upstream of
Bailey's Branch and Pleasant Run Creek.

Plaintiffs allege that over a period of years since 1965, General Motors has polluted plaintiffs' property, including the surface water and ground water, with polychlorinated biphenyls ("PCBs"). Plaintiffs allege that soil samples from their properties show abnormally high levels of PCBs. Plaintiffs' amended complaint identifies several specific spills and floods in which PCBs were released into ground and surface waters. All plaintiffs allege that PCBs have contaminated their soil and their groundwater, as well as fish and wildlife in the area. Several plaintiffs allege that their wells for drinking water were contaminated by the PCBs released by General Motors. Plaintiffs also allege that they have been exposed to PCBs discharged into the air and borne by winds and dust onto their property and into the air they have breathed.

Plaintiffs have alleged claims for negligence, nuisance, trespass, and unjust enrichment. They have also included an allegation of wanton and willful conduct aimed at recovering punitive damages. No plaintiff alleges that he or she is currently suffering any specific illness or adverse physical effects resulting from exposure to PCBs. In their prayer for relief, plaintiffs ask that the court "award Plaintiffs the reasonable and necessary costs of medical monitoring of the Plaintiffs' health over their lifetimes, due to Plaintiffs' exposure to PCBs on their property."

General Motors' pending motion is aimed at this prayer for relief. General Motors contends that such medical monitoring relief cannot possibly be available

to a plaintiff under Indiana law in the absence of proof that the plaintiff has suffered some present bodily injury as a result of the PCB contamination. This question of tort law is one that has divided state and federal courts in recent decades. See, *e.g.*, *Metro-North Commuter Railroad Co. v. Buckley*, 521 U.S. 424, 438-44 (1997) (collecting cases, declining to recognize broad tort action for lump sum award of damages for medical monitoring for asbestos exposure under Federal Employers' Liability Act, but leaving open possibility of a narrower action); *id.* at 449-52 (Ginsburg, J., dissenting in part) (arguing that FELA should recognize claim to reflect the difference in cost between medical tests a reasonable physician would prescribe for unexposed persons and reasonable monitoring regime for person with plaintiff's exposure).

In considering a motion to dismiss under Rule 12(b)(6) and a motion for judgment on the pleadings under Rule 12(c), the court must treat as true all factual allegations in the complaint and must give the plaintiffs the benefit of factual assertions that are not inconsistent with the complaint's allegations. See, *e.g.*, *Olson v. Wexford Clearing Servs. Corp.*, 397 F.3d 488, 490 (7th Cir. 2005) (same standard under both provisions); *Trevino v. Union Pacific Railroad Co.*, 916 F.2d 1230, 1239 (7th Cir. 1990) (reversing dismissal). In considering a motion for summary judgment under Rule 56, the court must consider evidence, but must consider the evidence in the light reasonably most favorable to the non-moving parties. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In this particular case, General Motors seeks summary judgment based solely on the

plaintiffs' statements that they do not intend to offer evidence at trial of any present physical injury, so the legal issue is essentially identical under any of the three procedural routes General Motors has sought to use.

For purposes of General Motors' pending motion, the court therefore must assume the following:  PCBs are persistent and highly toxic carcinogens that accumulate in the body.  Exposure to PCBs above background levels in the environment can greatly increase a person's risk for a number of serious and even life-threatening diseases.  Exposure to PCBs does not typically result in immediate manifestation of disease or injury.  Instead, cumulative harmful effects can include immune suppression, liver damage, thyroid disease, prostate cancer, non-Hodgkin's lymphoma, pancreatic cancer, diabetes, and reproductive disorders.

The court must also assume that periodic medical testing and diagnostic procedures – beyond those that would be recommended for someone without plaintiffs' exposure to PCBs – can identify many of the illnesses caused by PCB exposure.  Early detection can greatly increase the cure rates and mitigate the harm caused by the exposure.  The court also assumes that plaintiffs can prove that regular medical monitoring is a reasonable and medically necessary response to the exposure they have experienced as a result of General Motors' actions.

In other words, the court must assume for purposes of General Motors' motion that plaintiffs would be able to satisfy the elements of a claim for medical

monitoring as set forth by the Third Circuit in applying Pennsylvania law in *In re Paoli Railroad Yard PCB Litigation*:

> We . . . predict that the Supreme Court of Pennsylvania would follow the weight of authority and recognize a cause of action for medical monitoring established by proving that:
>
> 1.    Plaintiff was significantly exposed to a proven hazardous substance through the negligent actions of the defendant.
>
> 2.    As a proximate result of exposure, plaintiff suffers a significantly increased risk of contracting a serious latent disease.
>
> 3.    That increased risk makes periodic diagnostic medical examinations reasonably necessary.
>
> 4.    Monitoring and testing procedures exist which make the early detection and treatment of the disease possible and beneficial.

916 F.2d 829, 852 (3d Cir. 1990); see also *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 785-87 (3d Cir. 1994) (reversing summary judgment for defendants and adhering to view of Pennsylvania law on appeal after remand).

For purposes of General Motors' motion, the court also assumes that General Motors actually knew of the dangers of PCBs, knew it was contaminating plaintiffs' property, and knew it was exposing the plaintiffs to increased dangers. That is, the court must assume that plaintiffs will be able to prove not only that General Motors was negligent but that General Motors acted deliberately, knowingly, willfully, and/or wantonly in subjecting plaintiffs to this contamination over a period of decades.

*Discussion*

Plaintiffs' requests for medical monitoring damages are governed by Indiana law. "Where state law provides the rule of decision, the federal courts must predict how the highest court of the state would decide the case if presented with the case today." *Klunk v. County of St. Joseph*, 170 F.3d 772, 777 (7th Cir. 1999); *McGeshick v. Choucair*, 72 F.3d 62, 65 (7th Cir. 1995); *Konradi v. United States*, 919 F.2d 1207, 1213 (7th Cir. 1990). Where the state's highest court has not addressed an issue, the federal courts examine the decisions of the lower state courts. *E.g.*, *Klunk*, 170 F.3d at 777; *King v. Damiron Corp.*, 113 F.3d 93, 95 (7th Cir. 1997). The Seventh Circuit reads decisions of the Indiana Court of Appeals as providing "strong indication of how it believes the Supreme Court would decide a similar question, unless there is a persuasive reason to believe otherwise." *General Accident Ins. Co. of America v. Gonzales*, 86 F.3d 673, 675 (7th Cir. 1996); accord, *Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 177 (1941) ("An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question."); cf. *Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434, 442-43 (7th Cir. 2005) (predicting that state supreme court would not follow a particular decision by an intermediate appellate court).

Plaintiffs rely on *Gray v. Westinghouse Electric Corp.*, 624 N.E.2d 49 (Ind. App. 1993), another case involving PCB contamination. Plaintiffs in that case lived adjacent to a city dump. They alleged that Westinghouse had hired

contractors to dispose of PCBs at the dump over a period of years.  The lead plaintiff Gray's claims were dismissed and dismissal was affirmed on procedural grounds.  The substantive decision concerned plaintiff Griffin, who sued for nuisance alleging that the contamination of his property had made it unmarketable.  He also alleged that the contamination had put his health at risk. He sought "compensation . . . for medical monitoring to diagnose health problems caused by latent disease processes."  624 N.E.2d at 52.

The trial court dismissed Griffin's claim for failure to state a claim upon which relief can be granted.  The Court of Appeals reversed.  The Court of Appeals held that Westinghouse could be held liable under a nuisance theory for contamination from a city dump it did not own, and based on activities of independent contractors it had hired to dispose of the PCBs it had generated.

Another issue was whether Griffin had adequately pled damages under his nuisance theory.  Because the passage is critical to the current motion, the court quotes the discussion in full:

> Finally, Griffin argues that because his property is unmarketable and his health is at risk from PCB contamination, the issue of damages is sufficiently pled.  Westinghouse maintains that Griffin's contentions are insufficient to entitle him to damages for medical monitoring or loss in the fair market value of his property. Whether Griffin is entitled to damages, and how much, is a question of fact.  However, the nuisance statute does require a plaintiff to plead that the situation is injurious to health or offensive to senses or obstructive of free use of property, so as to interfere with comfortable enjoyment of life or property.  But, actual physical damage to person or property need not be alleged.  *Friendship Farms*

*Camps, Inc. v. Parson* (1977), 172 Ind. App. 73, 359 N.E.2d 280, 282 (physical illness need not be shown); *Muehlman v. Keilman* (1971), 257 Ind. 100, 272 N.E.2d 591, 593 (damage to property not required). Evidence of inconvenience, annoyance and discomfort can all be grounds for recovery of damages in a nuisance action. *E.g., Id.*; *Cox*, 262 N.E.2d 550; *Keane v. Pachter* (1992), Ind. App., 598 N.E.2d 1067. Additionally, a plaintiff's fear for his safety or that of his property is sufficient to constitute a nuisance if the evidence shows that fear was reasonably justified. *Hays v. Hartfield L-P Gas* (1974), 159 Ind. App. 297, 306 N.E.2d 373, 376.

Generally, when determining what constitutes a nuisance, the question is whether it is reasonable to believe that the situation would naturally produce physical discomfort to persons of ordinary sensibilities, tastes and habits. *Wendt v. Kerkhof*, (1992), Ind. App., 594 N.E.2d 795, 797. Taken as true, Griffin's allegations that his property is unmarketable and his health is at risk due to PCB contamination are sufficient to sustain a nuisance claim. We think it is reasonable to believe that a substantial financial loss, combined with whatever health risks and consternation Griffin may have suffered due to the possible contamination of his property with a carcinogen, would cause physical discomfort. Griffin's proof of these allegations will determine whether a nuisance in fact exists and the damages to which he is entitled. *Hays*, 306 N.E.2d at 376. We hold that Griffin has stated a claim upon which relief can be granted and, therefore, find that the trial court improperly dismissed Griffin's complaint and remand for action consistent with this opinion.

624 N.E.2d at 54.

What does this passage tell us? First, Griffin's nuisance claim cannot be distinguished from plaintiffs' nuisance claims in this case on any relevant ground. Like the plaintiffs in this case, he was alleging PCB contamination of his property caused by activity at a nearby property. Like the plaintiffs in this case, he sought compensation for both the harm to his property value and for medical monitoring to address enhanced risks from exposure to the same carcinogen. Second, the

dismissal of the claim for medical monitoring damages was reversed.  These aspects of the case support plaintiffs' request for medical monitoring damages.

The passage in *Gray* also illustrates a point that can be obscured when lawyers and courts write of "claims" for medical monitoring costs.  The *Gray* court did not treat medical monitoring costs as an independent cause of action, but simply as one form of relief that could be available under the traditional common law tort of nuisance.  Accord, *e.g.*, *Badillo v. American Brands*, 16 P.3d 435, 441 (Nev. 2001) (declining to recognize independent cause of action for medical monitoring costs from exposure to second-hand tobacco smoke, but holding open the possibility of allowing medical monitoring costs as elements of damage for established cause of action); *Verbryke v. Owens-Corning Fiberglas Corp.*, 616 N.E.2d 1162, 1167 (Ohio App. 1992) (reversing summary judgment for defendant where asbestos exposure made it medically prudent to monitor plaintiff's condition, and where "required medical surveillance supports pecuniary harm" to plaintiff).

At the same time, some aspects of the *Gray* decision weaken its support for plaintiffs.  The court's treatment of the issue as a factual one does not give clear guidance on what might be required in terms of proof to obtain such relief.  Also, the court's opinion does not indicate that the court intended to choose sides in the national debate among state courts on the medical monitoring issue.  Still, the step of allowing medical monitoring damages is less radical than General Motors

suggests here.  As then-Judge Starr explained in a decision affirming an interim

award of the costs of diagnostic testing:

> To aid our analysis of whether tort law should encompass a cause of action for diagnostic examinations without proof of actual injury, it is useful to step back from the complex, multi-party setting of the present case and hypothesize a simple, everyday accident involving two individuals, whom we shall identify simply as Smith and Jones:
>
> Jones is knocked down by a motorbike which Smith is riding through a red light.  Jones lands on his head with some force.  Understandably shaken, Jones enters a hospital where doctors recommend that he undergo a battery of tests to determine whether he has suffered any internal head injuries.  The tests prove negative, but Jones sues Smith solely for what turns out to be the substantial cost of the diagnostic examinations.
>
> From our example, it is clear that even in the absence of physical injury Jones ought to be able to recover the cost for the various diagnostic examinations proximately caused by Smith's negligent action.  A cause of action allowing recovery for the expense of diagnostic examinations recommended by competent physicians will, in theory, deter misconduct, whether it be negligent motorbike riding or negligent aircraft manufacture.  The cause of action also accords with commonly shared intuitions of normative justice which underlie the common law of tort.  The motorbike rider, through his negligence, caused the plaintiff, in the opinion of medical experts, to need specific medical services – a cost that is neither inconsequential nor of a kind the community generally accepts as part of the wear and tear of daily life.  Under these principles of tort law, the motorbiker should pay.

*Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 825 (D.C.

Cir. 1984).  In *Friends for All Children*, a plane crash had caused all of the

plaintiffs to suffer from oxygen deprivation.  There was a medical need for prompt,

comprehensive, and expensive diagnostic examinations for potential brain

damage, so that effective treatment could begin for those with brain injuries.  It

was also clear that the crash had been the proximate cause of the need for those

examinations.  Accordingly, the costs of the diagnostic examinations were simply part of the damages proximately caused by the tort.

By reinstating the complaint and its allegations of damage in the form of the need for medical monitoring, the *Gray* court appears to have accepted essentially the same theory in the context of exposure to PCBs, though obviously without much explanation.  The court relied on prior cases teaching that fear for safety could support a nuisance action if the fear was "reasonably justified."  624 N.E.2d at 54, citing *Hays v. Hartfield L-P Gas*, 306 N.E.2d 373, 376 (Ind. App. 1974) (affirming trial court ruling that storage of liquid propane gas was not a nuisance where there was no evidence to show neighbors' fears for safety were "reasonably justified").  For present purposes, this court must assume that plaintiffs will be able to prove that their concerns about their future health are reasonably justified. The question then would become whether they could prove that the expenses of medical monitoring are reasonably necessary and that tortious acts by General Motors were a proximate cause of those expenses.

General Motors relies on two decisions by Judge McKinney of this court. In *Baker v. Westinghouse Electric Corp.*, No. IP 90-2036-C (S.D. Ind. June 25, 1991), the lead plaintiff alleged that he had worked for Westinghouse and that the company had allowed him to remove for his own use at home some insulation contaminated with PCBs.  After the contaminated insulation was removed from the residence, the lead plaintiff and his family sued for the reduced value of the

-11-

property and for the costs of medical monitoring.  Plaintiffs relied on the Third
Circuit decision in *Paoli Railroad Yards* to support their claim.  Judge McKinney
predicted that the Indiana Supreme Court would not follow that decision.  Judge
McKinney cited Indiana precedent holding that a plaintiff must have sustained
injuries to recover damages in tort, and he observed that the defendant's "finite
resources" should be "preserved to provide a remedy for the presently physically
injured plaintiff."  Slip op. at 9-10.  More recently, Judge McKinney adhered to
that view in a short decision that observed without further discussion or citation
that a medical monitoring claim "is not cognizable in the State of Indiana."
*Hunt v. American Wood Preservers Institute*, No. IP 02-389-C (S.D. Ind. July 31,
2002) (granting motion to dismiss medical monitoring claim).

Courts and counsel have made respectable arguments for both approaches
to medical monitoring remedies in the absence of a present injury.  The opinions
of Justices Breyer and Ginsburg in *Metro-North Commuter Railroad Co. v. Buckley*
provide a good starting point, see 521 U.S. 424, but there are numerous opinions
from around the nation.  In support of plaintiffs, see, *e.g.*, *In re Paoli Railroad
Yards PCB Litig.*, 935 F.2d at 849-52; *Burns v. Jaquays Mining Corp.*, 752 P.2d 28
(Ariz. App. 1987); *Potter v. Firestone Tire and Rubber Co.*, 863 P.2d 795, 822-23
(Cal. 1993); *Bourgeois v. A.P. Green Indus., Inc.*, 716 So.2d 355 (La. 1998)[1];

---

[1]The decision in *Bourgeois* was superseded on this point by a statute
excluding future medical monitoring as damages in tort cases.  See *Edwards v.
State ex. rel. Dep't of Health and Hospitals*, 804 So.2d 886 (La. App. 2001)
(discussing 1999 amendment to Louisiana Civil Code article 2315).

Case 1:02-cv-01077-DFH-TAB   Document 297   Filed 09/12/05   Page 13 of 17 PageID #: 2718

Ayers v. Township of Jackson, 525 A.2d 287, 311-12 (N.J. 1987); Redland Soccer Club, Inc. v. Dep't of the Army, 696 A.2d 137, 145 (Pa. 1997); Hansen v. Mountain Fuel Supply Co., 858 P.2d 970, 979-80 (Utah 1993); Bower v. Westinghouse Electric Corp., 522 S.E.2d 424, 429-34 (W. Va. 1999).  In support of defendant, see, e.g., Henry v. Dow Chemical Co., 701 N.W.2d 684 (Mich. 2005); Wood v. Wyeth-Ayerst Labs., 82 S.W.3d 849 (Ky. 2002); Hinton v. Monsanto Co., 813 So.2d 827, 831 (Ala. 2001); Trimble v. Asarco, Inc., 232 F.3d 946, 963 (8th Cir. 2000) (applying Nebraska law), overruled on jurisdictional issue, Exxon Mobil Corp. v. Allapattah Services, Inc., 125 S. Ct. 2611 (2005); Ball v. Joy Technologies, Inc., 958 F.2d 36, 39 (4th Cir. 1991) (applying Virginia and West Virginia law before West Virginia Supreme Court's decision in Bower).

In terms of pronouncements from the Indiana courts, Gray provides the clearest available guidance, and it supports plaintiffs.  If medical monitoring were not an available remedy under these circumstances, after all, the Gray court could have affirmed the trial court to the extent it had dismissed that request for relief. Judge McKinney's earlier prediction in Baker did not have the benefit of Gray. General Motors has reported that Gray was discussed in the briefs presented in the 2002 case of Hunt, but Judge McKinney's short entry did not address the case and therefore offers little additional guidance on this question.[2]

---

[2]The Indiana Supreme Court has summarily affirmed a Court of Appeals holding that medical monitoring of human beings is not a "corrective action" or an "exposure assessment" under the Indiana Underground Storage Tank Act.  Shell Oil Co. v. Meyer, 705 N.E.2d 962, 981 (Ind. 1998), affirming in relevant part Shell (continued...)

General Motors points out that *Gray* leaves unanswered questions as to the exact standards a plaintiff would need to meet to win medical monitoring damages as part of a tort recovery.  Nevertheless, the decision left the door open to such claims.  This court need not try to map or predict the exact boundaries of such claims for relief at this stage of this case.  If plaintiffs are able to prove the elements of a recognized tort such as nuisance, then the court will need to craft jury instructions to provide more specific guidance as to available remedies.  For now, it is enough to say that the limited evidence from *Gray* supports a provisional prediction that the Indiana courts are likely to recognize a claim for medical monitoring damages as part of the remedy for a nuisance claim even if there is no evidence of a present physical injury.

Plaintiffs have suggested that the court should consider certifying a question of law to the Indiana Supreme Court concerning the availability of medical monitoring damages.  There may come a time in this case when that step should be taken, either by this court or perhaps the Seventh Circuit.  If the issue is presented to the state court in that manner, however, it would probably make most sense to do so only when it is crystal clear that the question of law will in fact be decisive, and to give the state court a full factual record.  At the present

---

[2](...continued)
*Oil Co. v. Meyer*, 684 N.E.2d 504, 521-22 (Ind. App. 1997).  That statutory determination does not guide resolution of the common law issue now before this court.

time, for example, it is easy to imagine the prospect of a series of certified questions at preliminary stages of the case.  The state court is unlikely to be receptive to such an approach.  Instead, the case will develop in this trial court, and questions of law can be decided once the facts have been developed and found.  Cf. *Konradi v. United States*, 919 F.2d 1207, 1213 (7th Cir. 1990) ("The more nebulous or unsettled the legal standard, the more difficult it should be to exclude contested facts from consideration on the ground that they are immaterial.").

Accordingly, defendant General Motors' motion to dismiss plaintiffs' prayers for the costs of medical monitoring and for summary judgment on the same issue is hereby denied.

So ordered.

Date: September 12, 2005

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

William Bock, III
KROGER GARDIS & REGAS
wb@kgrlaw.com

Reynolds B. Brissenden
KROGER GARDIS & REGAS
rbb@kgrlaw.com

Gregory P. Cafouros
KROGER GARDIS & REGAS, LLP
gpc@kgrlaw.com

Martin Czinczel Calhoun
SPRIGGS & HOLLINGSWORTH
mcalhoun@spriggs.com

Elizabeth L. Crooke
ENGSTROM LIPSCOMB & LACK
bcrooke@elllaw.com

Bruce A. Featherstone
FEATHERSTONE DESISTO
bfeatherstone@featherstonelaw.com

Robert William Finnerty
GIRARDI & KEESE
rfinerty@girardikeese.com

Thomas Vincent Girardi
GIRARDI & KEESE
tgirardi@girardikeese.com

Jay P. Kennedy
KROGER GARDIS & REGAS
jpk@kgrlaw.com

James A. Knauer
KROGER GARDIS & REGAS, LLP
jak@kgrlaw.com

Brian J. Leinbach
ENGSTROM LIPSCOMB & LACK
bleinbach@elllaw.com

John F McCauley
MCTURNAN & TURNER
jfm@mtlitig.com

Lee B. McTurnan
MCTURNAN & TURNER
lmcturnan@mtlitig.com

Ignacia S. Moreno
SPRIGGS & HOLLINGSWORTH
imoreno@spriggs.com

Frank C. Porada
FEATHERSTONE DESISTO LLP

fporada@featherstonelaw.com

Traci Meakem Richmond
SPRIGGS & HOLLINGSWORTH
trichmond@spriggs.com

Carrie J. Rognlien
GIRARDI & KEESE
crognlien@girardikeese.com

David E. Wright
KROGER GARDIS & REGAS
dew@kgrlaw.com