UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DARREN ALLGOOD, *et al.*, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:02-cv-1077-DFH-TAB |
| ) | |
| GENERAL MOTORS CORPORATION, ) | |
| ) | |
| Defendant. ) | |

ENTRY ON MOTION TO STRIKE NEW EXPERT REPORT AND FOR SANCTIONS

Defendant General Motors' motion to strike the new expert report of Nick Tillema submitted by plaintiffs on November 30, 2006 is hereby granted. The court also grants GM's motion for sanctions and will award GM its reasonable costs and attorney fees incurred in filing and briefing the motion.

I.   *Factual Background*

The plaintiffs have sued General Motors Corporation for damages caused by PCB (polychlorinated biphenyl) pollution of their residential real estate near the General Motors die casting plant in Bedford, Indiana. The PCB contamination in the area is the subject of a clean-up plan pursuant to an agreement among General Motors, the United States Environmental Protection Agency, and the Indiana Department of Environmental Management. This tort action seeks

additional relief on behalf of nearby landowners on theories that include nuisance and trespass.

The court previous issued substantive decisions in the case in *Allgood v. General Motors Corp.*, 2006 WL 2669337 (S.D. Ind. Sept. 18, 2006) (addressing multiple motions for summary judgment and challenges to expert witness testimony), and 2005 WL 2218371 (S.D. Ind. Sept. 12, 2005) (denying motion to dismiss claim for medical monitoring damages). The court's lengthy September 18, 2006 decision had the effect of foreclosing plaintiffs' largest compensatory damages claims (primarily the cost of a hypothetical clean-up of plaintiffs' properties at a cost of roughly 20 times the pre-contamination fair market value of all plaintiffs' property) but did not resolve the case entirely.

The court met with counsel on October 13, 2006 to set a new trial date and to address any further items needed to prepare for trial. The court set the trial for October 13, 2007. Over GM's objection, the court expressly allowed plaintiffs to provide a supplemental expert report from Dr. Daniel T. Teitelbaum, M.D., in support of plaintiffs' claims for emotional damages. The court also ordered plaintiffs to provide no later than November 30, 2006 "a detailed and individualized statement of all remaining claims for damages and the factual bases for those claims." Docket No. 482.

On December 1, 2006, plaintiffs served GM's counsel with a new report from Nick Tillema, a real estate appraiser. The new report is labeled a "Summary Appraisal Report of a Complete Appraisal Analysis." The new report is 137 pages long. It contains summaries of Tillema's opinions on the fair market values of plaintiffs' properties, both with and without the PCB contamination, and fair rental values and lost rental values of plaintiffs' properties.

II.   *The Motion to Strike*

General Motors has moved to strike the Tillema report and for an award of monetary sanctions. GM points out that the deadline for serving expert reports was May 1, 2004, which was extended retroactively on February 4, 2005 (over GM's objections) to give plaintiffs until May 1, 2005 a final opportunity to provide complete expert witness reports. Plaintiffs served the new Tillema report 19 months after the final extended deadline. The new Tillema report uses new methods and new data to address damages issues that plaintiffs had not addressed previously with expert testimony. Those damages issues have been in this case from the beginning. Plaintiffs bear the burden of proof on those issues.

Plaintiffs have offered two theories for justifying the late delivery of the new Tillema report. Neither theory holds up against even light scrutiny.

A.  *A "Supplemental" Report?*

Plaintiffs' first theory is that the new Tillema report is merely a supplement to his earlier expert report, which was served within the extended deadline. Plaintiffs invoke Rule 26(e)(1) of the Federal Rules of Civil Procedure, which provides:

> With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty [to supplement or correct] extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) [final pretrial disclosures] are due.

By way of background, plaintiffs originally submitted an expert report (actually two reports) from Tillema. (For present purposes, the court focuses on the final version of that report, signed by Tillema on April 29, 2005, and filed as Exhibit A-1 to GM's motion to exclude his opinions, Docket No. 310.) Plaintiffs offered Tillema's 2005 report to support the claim that their properties' market values would be diminished, even after complete remediation of the PCB pollution, by reason of a stigma from association with the pollution and clean-up. Tillema's 2005 report expressed the opinion that even after remediation, the fair market values of plaintiffs' properties would be between five and fifteen percent below what they would have been without the pollution. Docket No. 318, Ex. A-1, at 15.

In preparing his 2005 report, Tillema did not perform market value appraisals of any of the plaintiffs' properties. Tillema Dep. at 115-16. He had

looked at the properties for what he described as a "drive-by inspection" but had never set foot on any of them. Tillema Dep. at 108-09. The 2005 report did not include any specific information about any of the plaintiffs' individual properties, apart from photographs and a few basic facts about each tract. *Id.* The 2005 report also contained very little specific information about or analysis of the Bedford residential real estate market. See Docket No. 318, Ex. A-1, at 1-15.

In his deposition, Tillema testified that he expected that some other expert would need to value the individual properties in the future, and then use his opinions on stigma percentages to come up with a bottom-line number for property damage. Tillema Dep. at 583-84.

In the prior ruling, the court addressed GM's challenge to the admissibility of Tillema's opinions. The court did not rule directly on the *Daubert* challenge but dismissed all of the so-called "stigma" damages claims without prejudice as speculative and premature. 2006 WL 2669337, at *35-37.

After the court's ruling, plaintiffs' counsel hired Tillema to inspect each property, to look at sales of comparable nearby properties that had not been polluted, and to offer opinions for purposes of the litigation (presumably not for a mortgage lender) as to the fair market value and rental value of each property, both with and without the pollution. The new Tillema report contains a detailed valuation of each property based on inspections of the properties and sales of

comparable nearby properties. The new Tillema report expresses opinions about the fair market value and fair rental value of each property as if it were not contaminated and based on actual conditions in November 2006. The report provides a summary of the reasons for Tillema's opinions.

Plaintiffs' attempt to describe the new Tillema report as a "supplement" to his April 2005 report is baseless. The new Tillema report is merely a late attempt to provide entirely new expert evidence on issues that have been in the case since the beginning.

Tillema did not present his new report as a supplement, and it cannot fairly be described as one. Plaintiffs first described it as a supplement in their response to GM's latest motion. The new report is based on research and data that were never presented before. When asked in his deposition whether he had undertaken the sorts of work and analysis reflected now in his new report, Tillema said that such work was outside the scope of his engagement. Tillema Dep. at 56-57, 115-16.

Rule 26(e) imposes a duty on the producing party to supplement information that is incorrect or incomplete. It does not give the producing party a license to disregard discovery deadlines and to offer new opinions under the guise of the "supplement" label. *Solaia Technology LLC v. ArvinMeritor, Inc.*, 361 F. Supp. 2d 797, 806 (N.D. Ill. 2005), citing *Coles v. Perry*, 217 F.R.D. 1, 3 (D.D.C.

2003) (striking late-filed report styled as a "supplemental opinion"); *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 662 (N.D. Ga. 2001) (Rule 26(e) imposes *duty* on producing party; it does not give that party a *right* to rely on supplements to produce information required by earlier deadline); see also *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998) (affirming exclusion of late report presented as "supplement": "The purpose of supplementary disclosures is just that – to supplement. Such disclosures are not intended to provide an extension of the expert designation and report production deadline."); *Gilbane Building Co. v. Downers Grove Community High School*, 2005 WL 838679, *9 (N.D. Ill. April 5, 2005) (rejecting attempt to "supplement" with an entirely new subject and analysis); *Keener v. United States*, 181 F.R.D. 639, 640-41 (D. Mont. 1998) (excluding defendant's late attempt to present "supplement" with the substantive opinions in the case).

Chief Magistrate Judge Garcia of the District of New Mexico described persuasively the problems with plaintiffs' proposed approach:

> Although Fed. R. Civ. P. 26(e) requires a party to "supplement or correct" disclosure upon information later acquired, that provision does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report (indeed, the lawsuit from the outset).
>
> To rule otherwise would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could "supplement" existing reports and modify opinions previously given. This practice would surely circumvent the full disclosure requirement implicit in Rule 26 and would interfere with the Court's ability to set case management deadlines, because new reports and opinions would warrant further

>  consultation with one's own expert and virtually require new rounds of depositions. That process would hinder rather than facilitate settlement and the final disposition of the case.

*Beller v. United States*, 221 F.R.D. 689, 695 (D.N.M. 2003) (striking "supplemental" report with opinions broader and deeper than and different from those provided in original timely report), quoting *Resolution Trust Corp. v. Gregory*, No. Civ. 94-0052 (D.N.M.) (unpublished mem. by Circuit Judge Kelly, sitting by designation). This reasoning applies here. Treating Tillema's new report as a supplemental opinion would undermine any court's efforts to manage expert discovery. It would make a mockery of the magistrate judge's warning, when he allowed the final extension to May 1, 2005, that "the line has now been drawn." Docket No. 218 at 7.

### B. *Implied Permission?*

Plaintiffs' second theory for serving the new Tillema report is that the court's scheduling order of October 13, 2006 gave them "implicit" permission to do so. Plaintiffs rely on the court's order that they provide no later than November 30, 2006 "a detailed and individualized statement of all remaining claims for damages and the factual bases for those claims." Docket No. 482. Plaintiffs argue that the Tillema report merely provides the required "detailed and individualized statement" of damages claims. That argument is no less disingenuous than the "supplement" argument.

When the court intended to allow an additional expert report, it said so, with respect to Dr. Teitelbaum and the claims for emotional distress. That order was stated at the conference, over GM's objections. No one present at the conference could reasonably have thought the court was giving *implicit* permission for a new major expert witness report 19 months after the final deadline for such reports.

The court's order that plaintiffs provide new detailed and individualized statements of their damages by November 30, 2006 was an attempt to accommodate plaintiffs once more – to avoid possible exclusion of their remaining damage claims based on disputes about whether their prior disclosures of those claims had been sufficient to give GM fair notice. Rather than exclude those claims, the court gave plaintiffs what was intended to be a final opportunity to be clear, specific, and detailed about their damages claims, and to do so at a time when GM could do additional discovery if necessary. Plaintiffs' theory that the court authorized the new Tillema report is an attempt to take this limited accommodation and turn it into a license for yet another "do-over" on their expert testimony. (The magistrate judge authorized the first "do-over" in his order of February 5, 2005, which retroactively extended the original expert disclosure deadline and gave plaintiffs until May 1, 2005 to comply fully with respect to all opinions subject to Fed. R. Civ. P. 26(a)(2). Docket No. 218 at 7.)

At the October 13, 2006 conference, the parties and the court talked about plaintiffs' remaining claims for diminished value and loss of use of their

properties. The measure of such damages is typically the reduced rental value and/or reduced market value of the property. See *Terra-Products, Inc. v. Kraft General Foods, Inc.*, 653 N.E.2d 89, 93-94 (Ind. App. 1995); *Keane v. Pachter*, 598 N.E.2d 1067, 1078-74 (Ind. App. 1992); Restatement (Second) of Torts § 929(1) (1979). GM informed the court that it was planning to move for summary judgment on the basis that plaintiffs had no expert testimony to offer on the property valuation issue. The court pointed out that expert opinion is not necessary, at least under Indiana law, which holds that a property owner is qualified to offer an opinion about the value of his or her own property. See *Allgood v. General Motors Corp.*, 2006 WL 2669337, at *36 n.14. That discussion led the court to order plaintiffs to provide the detailed and individualized statements. Plaintiffs said nothing in the discussion about wanting to have Tillema or any other expert offer opinions on the subject. The fact that plaintiffs merely served the report, without seeking clarification of this point either during the conference or afterwards, and without informal notice to GM, further undermines plaintiffs' asserted rationale.[1]

If plaintiffs had tried to rely on a brand new expert, they could not have argued with a straight face that the court implicitly authorized them to go out and

---

[1] Plaintiffs assert "GM was fully aware that Nick Tillema was an expert retained by the Plaintiffs and that he would be supplying evidence concerning the valuation of the Plaintiffs' properties." Pl. Br. at 3. It is difficult to credit the second half of that sentence. Tillema's original reports did not express opinions as to the fair market value of plaintiffs' properties. He testified in his deposition that individual appraisals (such as those in his new report) were beyond the scope of his assignment. Tillema Dep. at 56-57, 115-16.

find new experts. Their recruitment of Tillema to take on an entirely new task – the appraisal of plaintiffs' individual properties – offers the flimsy fig leaf of calling his work a supplement, but in substance is no more tolerable than bringing in an entirely new expert at this late date.

    C.    *Exclusion is Warranted*

Rule 37(c)(1) of the Federal Rules of Civil Procedure requires exclusion of undisclosed evidence unless the failure was justified or harmless. In the absence of any plausible justification for the new and late Tillema report, plaintiffs argue that the court still should not strike or exclude it. Plaintiffs contend there is still time for GM to conduct further discovery and to seek its own expert testimony on these points before trial. In short, plaintiffs contend that their violation of the May 1, 2005 deadline for disclosing expert testimony is harmless. Plaintiffs also argue that this evidence from Tillema is "extremely significant and material" to their claims. Pl. Br. at 8. When addressing such problems under Rule 37(c)(1), the Seventh Circuit has written that the following factors should guide the district court's discretion: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). Those factors clearly point toward exclusion in this case.

Allowing plaintiffs to use the late Tillema report would cause unfair prejudice to GM and would surprise it with new expert evidence at a very late stage of the case. Plaintiffs' argument ignores the complexity of this case and continues their pattern of trying to present to GM a continually moving target.

If the court were to allow plaintiffs to present the new Tillema opinions, GM would need to conduct another deposition of Tillema on this detailed new report and would need to evaluate whether additional rebuttal expert evidence or other rebuttal evidence was needed. If allowed, the new Tillema report and responses to it would also be likely to generate additional motion practice and expense. GM would incur these expenses and suffer these distractions more than four and a half years after the case was filed, just as the case is in the final lap of trial preparation. For an excellent discussion of why such consequences should not be dismissed as "harmless," see *Beller v. United States*, 221 F.R.D. 689, 694-95 (D.N.M. 2003) (rejecting supposedly "supplemental" report and reviewing origins of and reasons for exclusionary rule of Rule 37(c)(1) as amended in 1993); accord, *Finwall v. Chicago*, — F.R.D. —, —, 2006 WL 1491316, *6 (N.D. Ill. May 31, 2006) (excluding late expert report: "Late disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen discovery.").

Plaintiffs argue that exclusion would be an "extreme" sanction because the evidence is so "extremely significant." The argument shows (a) that plaintiffs misunderstand Rule 37(c)(1), and (b) that this evidence should have been

disclosed long ago, no later than May 1, 2005. There is nothing "extreme" about the exclusion remedy of Rule 37(c)(1). The rule presumes that exclusion is the appropriate remedy, unless the proponent can show that the failure was either justified or harmless. *E.g., Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998). This failure was neither.

Plaintiffs' claims of nuisance and trespass have been in the case from the beginning. That fact is important in evaluating whether plaintiffs acted willfully or in bad faith. Plaintiffs' attorneys should have expected even before they filed the complaint that they would need to present evidence at trial about the monetary measure of damages. Where the measure of damages is lost market value and lost rental value of real estate, a real estate appraiser would seem to be a rather predictable source of evidence. Yet plaintiffs apparently did not seek such evidence until October or November 2006.

Instead, plaintiffs had chosen to swing for the fences, seeking an eight or nine-figure recovery on the theory that they should recover roughly twenty times the value of their property as compensatory damages based on a hypothetical clean-up. See *Allgood v. General Motors Corp.*, 2006 WL 2669337, at *20-25 (rejecting this approach). They also sought to use Tillema to support their stigma theory and quite deliberately instructed him *not* to conduct the sort of parcel-by-parcel appraisals that they later asked him to conduct in November 2006. Tillema Dep. at 56-58.

Plaintiffs deliberately chose not to develop expert evidence on these topics at the early stages. In response to GM's arguments for summary judgment on the claim for stigma damages, plaintiffs argued (persuasively) that they did not need an expert to testify about the fair market value of their properties, but could offer their own opinions about the value of their own properties. See *Allgood*, 2006 WL 2669337, at *36 n.14, citing *In re Coyle*, 671 N.E.2d 938, 945 (Ind. App. 1996); *Jordan v. Talaga*, 532 N.E.2d 1174, 1188 (Ind. App. 1989).

In other words, plaintiffs made strategic choices about how they would litigate this case. This court and Magistrate Judge Hussmann allowed plaintiffs reasonable latitude and time (GM thinks it was unreasonable latitude and time) to develop their case as they saw fit. The court already gave plaintiffs one "do-over" on their expert testimony by giving them an extra year to fix the problems with their 2004 expert disclosures. GM and the court then devoted considerable resources to addressing the evidence developed by plaintiffs under that strategy.

If the new Tillema report presents "extremely significant and material" evidence, see Pl. Resp. at 8, it should have been presented within the first three years this case was being litigated, before the expiration of the deadline for disclosure of expert testimony. The court cannot treat the new Tillema report as a good faith effort to present plaintiffs' claims. The report may not be presented as part of a last-gasp effort to do one more "do-over" to rescue the remaining claims.

The appropriate sanctions in this case therefore include barring Tillema from testifying to the opinions stated in his new and late report. See, *e.g.*, *Hill v. Porter Memorial Hospital*, 90 F.3d 220, 224 (7th Cir. 1996) (absent a "compelling excuse, a district court is well within its discretion to exclude untimely proffered evidence or testimony"); *Nelson v. IPALCO Enterprises, Inc.*, 2005 WL 1924332, *7-8 (S.D. Ind. Aug. 11, 2005) (excluding attempt to use opportunity for rebuttal expert testimony to present new evidence on which plaintiffs bore burden of proof).[2]

III.   *Monetary Sanctions*

GM argues that the plaintiffs' effort violated this court's discovery and scheduling orders and was so baseless as to warrant monetary sanctions. The court agrees. The expert disclosure deadline was May 1, 2005. Plaintiffs'

---

[2]Plaintiffs attempt to distinguish *Hill* and *Nelson* on the basis that the new experts had not previously been identified in those cases, while plaintiffs here identified Tillema as an expert within the extended deadline. The attempted distinction ignores the fact that the new Tillema report addresses new subjects beyond the scope of his timely work. Plaintiffs also rely on *Sherrod v. Lingle*, 223 F.3d 605 (7th Cir. 2000), in which the Seventh Circuit held that the district court had abused its discretion by excluding an expert whose report was disclosed after the case management deadline. The Seventh Circuit recognized that district courts would be fully within their discretion in strictly applying rules and deadlines in most cases. *Id.* at 613. The Seventh Circuit found an abuse of discretion where both sides shared responsibility for some of the delays and where the defendants still had ample time to prepare for trial. *Sherrod* did not involve circumstances like those here, where, after prolonged and expensive expert discovery and motion practice, a party attempts to use a previously disclosed expert to conduct new work to offer new opinions, which would open the door to yet more rounds of discovery, rebuttal, and motion practice. And in this case, GM bears no responsibility for the years of delays in developing expert testimony about the market values of plaintiffs' own properties.

purported rationales for this tactic are so thin as to be disingenuous. In the language familiar from employment discrimination cases, the stated rationales are pretexts. The new report from Tillema is so different from his first that the "supplement" theory is full of holes. The attempt to find "implicit" authority to submit new expert testimony in the court's October 13, 2006 scheduling order is not based on a fair reading of the order or on the discussion in the conference.

GM should not have been put to the trouble and expense of evaluating the Tillema report and preparing and filing this motion. Sanctions are appropriate under Rule 16(f) and Rule 37(b)(2) for failure to obey an order entered under Rule 26(f), the order setting the extended deadline of May 1, 2005 for serving expert reports to comply with Rule 26(a)(2). GM may submit **no later than March 1, 2007** a statement of its fees and costs incurred in preparing and briefing its motion to strike. Plaintiffs may file a response no later than 14 days later. If no party requests an evidentiary hearing on the issue of the amount, the court will rule on the papers.

So ordered.

Date: February 2, 2007

_David F. Hamilton_
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

...

Case 1:02-cv-01077-DFH-TAB   Document 505   Filed 02/02/07   Page 17 of 18 PageID #: 19412

Copies to:

William Bock, III
KROGER GARDIS & REGAS
wb@kgrlaw.com

Reynolds B. Brissenden
KROGER GARDIS & REGAS
rbb@kgrlaw.com

Gregory P. Cafouros
KROGER GARDIS & REGAS, LLP
gpc@kgrlaw.com

Elizabeth L. Crooke
ENGSTROM LIPSCOMB & LACK
bcrooke@elllaw.com

Andrew Rudolph Falk
KROGER GARDIS & REGAS
arf@kgrlaw.com

Robert William Finnerty
GIRARDI & KEESE
rfinnerty@girardikeese.com

Thomas Vincent Girardi
GIRARDI & KEESE
tgirardi@girardikeese.com

Jay P. Kennedy
KROGER GARDIS & REGAS
jpk@kgrlaw.com

James A. Knauer
KROGER GARDIS & REGAS, LLP
jak@kgrlaw.com

Walter J. Lack
ENGSTROM LIPSCOMB & LACK
wlack@elllaw.com

Brian J. Leinbach
ENGSTROM LIPSCOMB & LACK
bleinbach@elllaw.com

-18-

Kurtis Allen Marshall
KROGER, GARDIS & REGAS LLP
kam@kgrlaw.com

Carrie J. Rognlien
GIRARDI & KEESE
crognlien@girardikeese.com

Sydney L. Steele
KROGER GARDIS & REGAS
sls@kgrlaw.com

David E. Wright
KROGER GARDIS & REGAS
dew@kgrlaw.com